**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ROGER ANTHONY DIXON,** | **)** | |
| **AIS #253258,** | **)** | |
| **Petitioner,** | **)** | |
| | **)** | |
| **v.** | **)** | **CIVIL ACTION NO. 19-00026-WS-N** |
| | **)** | |
| **REOSHA BUTLER,**[1] *Warden,* | **)** | |
| *G.K. Fountain Correctional* | **)** | |
| *Facility* | **)** | |
| **Respondent.** | **)** | |

## REPORT AND RECOMMENDATIONS

Petitioner Roger Anthony Dixon, an Alabama prisoner proceeding with

counsel, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 18-

1).[2] The District Judge presiding over this case referred Dixon's petition to the

undersigned Magistrate Judge who, under S.D. Ala. GenLR 72(a)(2)(R), is authorized

to require responses, issue orders to show cause and any other orders necessary to

develop a complete record, and to prepare a report and recommendation to the

District Judge as to appropriate disposition of the petition, in accordance with 28

U.S.C. § 636(b)(1) and Rules 8(b) and 10 of the Rules Governing Section 2254 Cases

---

[1] Based on the undersigned's review of ADOC's inmate registry, Roger Anthony Dixon is now in custody at G.K. Fountain Correctional Facility. *See* http://www.doc.state .al.us/inmatesearch (last accessed on Feb. 3, 2022). Pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts, Reosha Butler, the Warden of the G.K. Fountain Correctional Facility, is substituted as the proper Respondent in this action.

[2] The undersigned treats the corrected petition filed by Dixon as the operative petition in this action. *See infra* Section III.a.

in the United States District Courts. *See* S.D. Ala. GenLR 72(b); (1/23/2019 electronic referral).

The Respondent, through the Office of the Attorney General of the State of Alabama, timely filed an Answer (Doc. 15) to the petition. Dixon did not file a reply despite the Court affording him the opportunity. (*See* Doc. 16). Dixon's § 2254 petition is now under submission and is ripe for disposition. Following a thorough review of the petition and record, the undersigned finds that an evidentiary hearing is not warranted.[3] Upon consideration, the undersigned **RECOMMENDS** that Dixon's habeas petition (Doc. 18-1) be **DISMISSED with prejudice**. The undersigned also **RECOMMENDS** that Dixon be **DENIED** a Certificate of Appealability and leave to proceed in forma pauperis on appeal.

## I. *Background*

In 2014, the Escambia County Grand Jury indicted Dixon on the following charges: attempted murder, domestic violence by strangulation or suffocation, sexual torture, and first degree kidnapping. (Doc. 15-2). Following a jury trial. Dixon was convicted of domestic violence by strangulation or suffocation in violation of Ala. Stat. § 13A-6-138(b) and acquitted of the remaining charges. (Doc. 15-3). The trial court

---

[3] This case is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA) because Dixon filed his federal habeas petition after April 24, 1996. "AEDPA expressly limits the extent to which hearings are permissible, not merely the extent to which they are required." *Kelley v. Sec'y for the Dep't of Corr.*, 377 F.3d 1317, 1337 (11th Cir. 2004). Dixon failed to establish that an evidentiary hearing is warranted in this case. *Birt v. Montgomery*, 725 F.2d 587, 591 (11th Cir. 1984) (en banc) ("The burden is on the petitioner . . . to establish the need for an evidentiary hearing.").

sentenced Dixon to twenty years imprisonment. (Doc. 15-5). Dixon filed a motion for a new trial, which the trial court denied. (Doc. 15-6).

Dixon appealed his conviction to the Alabama Court of Criminal Appeals ("ACCA"), arguing, among other things, that the trial court erred by limiting his ability to cross examine the victim in this case which deprived him of a fair trial "as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution." (Doc. 15-7, PageID.212). The ACCA rejected Dixon's claims and affirmed his conviction, reasoning that Dixon failed to meet his "burden of persuasion on [his] claim that the trial court abused its discretion by limiting cross-examination" of the victim. (Doc. 15-10, PageID.329). Dixon applied for a rehearing (Doc. 15-11), which was denied (Doc. 15-12). On July 27, 2017, Dixon filed a petition for a writ of certiorari in the Supreme Court of Alabama, raising the same arguments from his brief in the ACCA. (Doc. 15-13). The Supreme Court of Alabama denied Dixon's petition on September 15, 2017. (Doc. 15-14). Dixon did not appeal to the Supreme Court of the United States, and at the time he filed the current petition, he had not filed any state collateral proceedings. (*See* Doc. 15, PageID.118).

Dixon filed the subject habeas petition under 28 U.S.C. § 2254 in the Middle District of Alabama on December 16, 2018. (Doc. 1). The District Court for the Middle District of Alabama transferred Dixon's petition to this district under 28 U.S.C. § 1631 because he was convicted, sentenced, and, at the time of filing, incarcerated in Escambia County, which is in the Southern District of Alabama. (*See* Doc. 2; Doc. 3). After the transfer, this Court ordered Dixon to refile his § 2254 petition on the Court's

form. (Doc. 5). Dixon complied. (Doc. 9). The Court then ordered Dixon's petition to be served. (Doc. 10). Respondent, through the Office of the Attorney General for the State of Alabama, filed an answer with the state court record attached. (Doc. 15). The Court afforded Dixon an opportunity to file a reply, but he did not submit one. (Doc. 16). On October 10, 2021, Dixon filed a motion for an evidentiary hearing. (Doc. 17). About a month later, Dixon filed a motion to correct a clerical error: the amended petition he filed in response to the Court's order (Doc. 9) inadvertently omitted a large portion of his initial § 2254 petition. (Doc. 18; Doc. 18-1).

## II.    *Legal Standards*

This Court's review of Dixon's petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). Under AEDPA, "the role of the federal court . . . is strictly limited." *Jones v. Walker*, 496 F.3d 1216, 1226 (11th Cir. 2007).

### a.  Merits Review

AEDPA significantly limits the scope of federal review where the state court adjudicated a claim on the merits. Specifically, § 2254(d) provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim - -
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

According to subsection (1), "[a] federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is not 'contrary to . . . clearly established Federal law' simply because the court did not cite our opinions." *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). Indeed, "a state court need not even be aware of our precedents, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.* (internal quotation marks omitted).

The "clearly established Federal law" contemplated by subsection (1) "refers to the holdings, as opposed to the dicta, of [U.S. Supreme] Court's decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (internal quotation marks omitted); *accord Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Moreover, review under Section 2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Importantly, "[f]or purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks omitted) (emphasis in original). Thus, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* (internal quotation marks omitted). That is, "an

unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (internal quotation marks omitted); *Williams v. Taylor*, 529 U.S. 362, 411 (2000) (noting that a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law *erroneously* or *incorrectly*"—the "application must also be *unreasonable*"). "To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted). And "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Harrington*, 562 U.S. at 101 (internal quotation marks omitted). However, "even a general standard may be applied in an unreasonable manner." *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). The petitioner bears the burden of showing that the state court's ruling was contrary to, or involved an unreasonable application of, controlling Supreme Court precedent. *Harrington*, 562 U.S. at 98; *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

Likewise, with respect to §2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt v. Titlow*, 571 U.S. 12 (2013) (internal quotation marks omitted). In other words, "if some fair-minded jurists could agree

with the state court's decision, although others might disagree, federal habeas relief must be denied . . . . [T]he deference due is heavy and purposely presents a daunting hurdle for a habeas petitioner to clear." *Loggins v. Thomas*, 654 F.3d 1204, 1220 (11th Cir. 2011); *see also Greene v. Fisher*, 565 U.S. 34 (2011) (noting that the AEDPA standard is purposely onerous because "federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice system, and not as a means of error correction") (citations and internal quotation marks omitted); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (noting that the AEDPA standard "is a difficult to meet . . . and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (citations and internal quotation marks omitted); *Holsey v. Warden, Georgia Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012) (noting that "if some fairminded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied") (citation omitted).

Accordingly, in evaluating a § 2254 petition, the Court takes great care to abide by the stricture that "[a] federal court may not grant habeas relief on a claim a state court has rejected on the merits simply because the state court held a view different from its own." *Hill v. Humphrey*, 662 F.3d 1335, 1355 (11th Cir. 2011); *see also Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1286 (11th Cir. 2012) ("This inquiry is different from determining whether we would decide *de novo* that the petitioner's claim had merit."). "If this standard is difficult to meet—and it is—that is because it was meant to be. [Federal courts] will not lightly conclude that a State's criminal

justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." *Burt*, 571 U.S. at 20 (internal citations and quotation marks omitted).

## III. *Analysis*

Dixon raises one ground for relief in his § 2254 petition: the trial court violated his right to his Sixth Amendment right to confront witnesses by restricting cross examination of the victim.[4] Upon consideration, the undersigned finds that Dixon's Sixth Amendment claim is meritless. Before analyzing Dixon's claim, the undersigned will address his motion for leave to correct a clerical error to clarify the operative petition in this action.

### a. Dixon's Motion to Correct a Clerical Error

Dixon moves to correct a clerical error in his first amended § 2254 petition. (Doc. 18). Dixon claims that "several pages did not properly scan" when he submitted the amended petition. (Doc. 18). "These pages were included in the original petition

---

[4] Respondent's Answer addresses two potential claims raised by Dixon: (1) the trial court violated his right to his Sixth Amendment right to confront witnesses by restricting cross examination; and (2) the trial court abused its discretion by refusing to order a new trial after alleged juror misconduct. (Doc. 15, PageID.120). However, the undersigned will only address the single, express claim Dixon raises in his § 2254 petition. Dixon, represented by counsel, only filled out one ground for relief section on the Court's form § 2254 petition and typed "NONE" in the space allocated for Grounds Two, Three, and Four. (*See* Doc. 18-1, PageID.418–420). Further, Dixon's implication that the trial court abused its discretion in failing to address juror misconduct during voir dire fails identifies only alleged errors of state law, making the claim incognizable on § 2254 review. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[F]ederal habeas corpus relief does not lie for errors of state law." (quoting *Estelle v. McGuire,* 502 U.S. 62, 67 (1991)).

filed with the Court," Dixon notes, "but did not properly scan when refiling in accordance with this Honorable Court's Order." (Doc. 18).

The corrected petition Dixon submits contains no new substantive claims for relief—only additional argument and context are included. (*Compare* Doc. 9 *with* Doc. 18-1). Accordingly, Respondent would not be prejudiced by the undersigned's consideration of the corrected petition.[5] Upon consideration, Dixon's motion to correct a clerical error (Doc. 18) should be **GRANTED** and the corrected petition (Doc. 18-1) should be the operative petition in this action.

## b. Dixon's Sixth Amendment Claim

Citing the Sixth Amendment's Confrontation Clause, Dixon argues that the trial court denied him an opportunity to meaningfully cross examine the victim during her testimony on behalf of the prosecution. Dixon claims that "the trial court materially impeded the defense's ability to cross exam the alleged victim by requiring that the defense disclose to the witness, and the court, what specific inconsistent statements it intended to [bring up on cross examination]." (Doc. 18-1, PageID.445). Respondent contends that the trial court did not meaningfully interfere with Dixon's cross examination of the victim. Instead, Dixon's trial counsel failed to respond to the trial court's reasonable inquiry into the potential relevance of his desired cross examination. (Doc. 15, PageID.127).

---

[5] Both the first amended petition (Doc. 9) and the corrected petition (Doc. 18-1) raise the same substantive claim, which fails on the merits. *See infra* Section III.b.

Dixon's Confrontation Clause claim falls short of § 2254's demanding standard. "As a rule, [federal courts] review 'the highest state court decision reaching the merits of a habeas petitioner's claim.' " *Holland v. Florida*, 775 F.3d 1294, 1308 (11th Cir. 2014) (quoting *Hittson v. GDCP Warden*, 759 F.3d 1210, 1231 (11th Cir. 2014)), *cert. denied*, 577 U.S. 1021 (2015). Here, that decision is the ACCA's May 26, 2017, memorandum opinion (Doc. 15-10), which addressed Dixon's Confrontation Clause argument as follows:

> Dixon contends that the trial court erred when it limited his cross-examination of the victim, D.K.D.
>
> During discussions about the prohibition of certain evidence by Rule 412, Ala. R. Evid., the defense stated to the trial court that there was a deputy sheriff named Sean Klaetsch and that he had been involved in some type of sexual conduct involving D.K.D. During cross-examination the defense asked the victim if she knew Sean Klaetsch and she answered affirmatively and then she was asked if she knew Sean's wife, Melissa Klaetsch, and the victim answered that she knew of her. Defense counsel then asked: "You, at one time, were friends with Sean Klaetsch?" (R. 741.) The State objected on the ground that it was not relevant, it was immaterial, and the defense was headed toward improper character evidence. The trial court stated that it saw no relevancy but it asked counsel to approach the bench to "explain a thread of relevance." (R. 741.) The defense responded that the court was "cutting me off to the point that I can't get to the point of relevance. ... So I move for a mistrial." (R. 741.) The trial court denied the motion for a mistrial and again asked counsel to step forward and stated that
>
>> "I'm trying to permit you the right to continue and to follow this line of questioning, but the State has interposed an objection. ... Can you give me some possible thread of relevance about what it has on the bearing of this case as to whether or not she knew this individual, somebody who -- I mean, where are you headed?"
>
> (R. 742.) Following further discussions on the matter, the trial court stated that its ruling was that "I will allow you some liberty, but it's got

-- we've got to get some quick, tie this thing together." (R. 744.) The defense then resumed questioning the victim, but on a different subject.

At the end of the State's case, the defense argued:

"Judge, as far as this last witness, [D.K.D.], her entire testimony, especially when the defendant had the opportunity to cross-examine her, this Court unduly limited the cross-examination. We were not allowed a thorough and sifting cross-examination, our rights to confront the witness, according to the United States Constitution, has been denied. And for those reasons, and the fact that we're not allowed a fair and impartial trial, we move for a mistrial.

(R. 752.) The trial court stated that it had followed the rules of evidence, and denied the motion for mistrial.

The trial court did not limit cross-examination. The trial court asked the defense to respond to the State's objection, and despite a weak response, allowed the defense to the opportunity to continue questioning the victim on the topic of her relationship with the Klaetschs as long as defense counsel intended the questioning to ultimately disclose its relevancy. The defense abandoned that line of questioning. The defense has not met its burden of persuasion on its claim that the trial.

(Doc. 15-10, PageID.328–29).

Dixon's claim fails because it neglects to address any deficiencies in the ACCA's decision. The entirety of Dixon's Confrontation Clause argument focuses on the trial court's alleged errors rather than the ACCA's decision. (*See* Doc. 18-1, PageID.443–48) "The petitioner carries the burden of proof" in § 2254 proceedings. *Cullen*, 563 U.S. at 181. By failing to identify any unreasonable application of clearly established Federal law[6] or unreasonable determination of facts in the last reasoned state court

---

[6] Dixon cites to alleged violations of Federal Rules of Evidence committed by the trial court. However, by their very terms, these Rules have no bearing on evidentiary rulings in *state* court.

decision reaching the merits of his claim, Dixon fails to meet this burden.

The undersigned's own review of the ACCA's decision finds no "unreasonable application of . . . clearly established Federal law" or "unreasonable determination of facts . . . ." *See* 28 U.S.C. § 2254(d). The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." U.S. Const. amend. VI.

> "[E]xposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.' *Davis, supra,* at 316–317, 94 S.Ct., at 1110 (citing *Greene v. McElroy,* 360 U.S. 474, 496 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959)). It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."

*Delaware v. Van Arsdall*, 475 U.S. 673, 678–79 (1986). "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam).

Here, the ACCA correctly identified the failure of Dixon's trial counsel to attempt cross examination of the victim after the trial court probed the relevancy of his line of questioning—which is within the trial court's authority, *see Van Arsdall*, 475 U.S. at 678–79. As Respondent aptly notes:

> The trial court did not refuse to allow the Dixon to cross-examine D.K.D., but instead sought to limit the evidence before the jury to that which was relevant to the case, and Dixon simply abandoned his line of

questioning without attempting to establish its relevancy. The trial court properly safeguarded Dixon's opportunity to confront and test the credibility and reliability of the witness while maintaining discretion to prevent the introduction of irrelevant or prejudicial evidence. To the extent that Dixon seeks to rely on Rule 613 of the Alabama Rules of Evidence to support his contention that he should not have been forced to disclose the specific evidence that he planned to use to impeach D.K.D., *see* (Doc. 9 at 16), this would simply be an assertion of state law error not cognizable for habeas relief. *See Estelle*, 502 U.S. at 67-68. Dixon is therefore not entitled to habeas relief on this claim.

(Doc. 15, PageID.127). In short, the undersigned cannot identify any "extreme malfunction for which federal habeas relief is the remedy," *see Burt*, 571 U.S. at 20 (internal citation and quotation marks omitted), in the ACCA's decision. Dixon's § 2254 petition (Doc. 18-1) should be **DISMISSED with prejudice**.

## c. Certificate of Appealability

In actions such as this one brought under § 2254, a "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts. "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court." 28 U.S.C.A. § 2253(c)(1)(A).

Where the district court "has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling

standard, a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (citations omitted and punctuation modified)).

Where habeas relief is denied on procedural grounds without reaching the merits of the underlying constitutional claim(s), "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. While "a COA does not require a showing that the appeal will succeed[,]" a prisoner seeking a COA must prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 337-38 (internal quotation marks omitted). Rather, "[a] certificate of appealability may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.'" *Spencer v. United States*, 773 F.3d 1132, 1137 (11th Cir. 2014) (en banc) (quoting 28 U.S.C. § 2253(c)(2)).

Upon consideration, the undersigned **RECOMMENDS** that Dixon be **DENIED** a Certificate of Appealability in conjunction with the dismissal of the present habeas petition, as he has not made a substantial showing of the denial of a constitutional right.[7]

---

[7] Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to

**d. Appeal In Forma Pauperis**

"An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." 28 U.S.C. § 1915(a)(3). A district court's finding

> that an appeal would not be in good faith because no certificate of appealability had been issued . . . is not enough to explain why the appeal on the merits would not be in good faith, because the standard governing the issuance of a certificate of appealability is not the same as the standard for determining whether an appeal is in good faith. It is more demanding . . . [T]o determine that an appeal is in good faith, a court need only find that a reasonable person could suppose that the appeal has some merit.

*Walker v. O'Brien*, 216 F.3d 626, 631-32 (7th Cir. 2000). In other words,

> [a] party demonstrates good faith by seeking appellate review of any issue that is not frivolous when examined under an objective standard. *See Coppedge v. United States*, 369 U.S. 438, 445, 82 S. Ct. 917, 921, 8 L. Ed. 2d 21 (1962). An issue is frivolous when it appears that "the legal theories are indisputably meritless." *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (citations omitted). In other words, an IFP action is frivolous, and thus not brought in good faith, if it is "without arguable merit either in law or fact." *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001). More specifically, "arguable means capable of being convincingly argued." *Sun v. Forrester*, 939 F.2d 924, 925 (11th Cir. 1991) (internal quotations and citations omitted). Nevertheless, where a "claim is arguable, but ultimately will be unsuccessful," it should be allowed to proceed. *Cofield v. Ala. Pub. Serv. Comm'n*, 936 F.2d 512, 515 (11th Cir. 1991).

---

this recommendation by the petitioner, he may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *See, e.g., Brightwell v. Patterson*, No. CA 11-0165-WS-C, 2011 WL 1930676, at *6 (S.D. Ala. Apr. 11, 2011), *report & recommendation adopted*, 2011 WL 1930662 (S.D. Ala. May 19, 2011). Should this Court deny a certificate of appealability, the petitioner "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

*Ghee v. Retailers Nat. Bank*, 271 F. App'x 858, 859–60 (11th Cir. 2008) (per curiam) (unpublished).

Considering the foregoing analysis, the undersigned **RECOMMENDS** the Court certify that any appeal by Dixon in this action would be without merit and therefore not taken in good faith, thus denying him entitlement to appeal in forma pauperis.[8]

## IV.   *Conclusion*

Dixon failed to identify—and the undersigned's own review did not reveal— any unreasonable application of clearly established federal law or unreasonable determination of facts in the ACCA's decision. Accordingly, the undersigned **RECOMMENDS** that:

- Dixon's motion to correct a clerical error (Doc. 18) be **GRANTED** and the corrected submission (Doc. 18-1) be treated as the operative habeas petition;

- Dixon's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 18-1) be **DISMISSED with prejudice**;

- Dixon's motion for an evidentiary hearing (Doc. 17) be **DENIED**;

- the Court find Dixon is not entitled to a Certificate of Appealability or to proceed in forma pauperis on appeal; and

- that final judgment be entered accordingly under Federal Rule of Civil Procedure 58.

---

[8] Should the Court deny leave to appeal in forma pauperis, the petitioner may file a motion to proceed on appeal in forma pauperis with the Eleventh Circuit Court of Appeals in accordance with Federal Rule of Appellate Procedure 24(a)(5).

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts; S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 3rd day of February 2022.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**